Good morning, ladies and gentlemen. We'll start with the first two cases of consolidated argument. Cases of Nash v. Schriro and Adams v. Schriro. Counsel? May it please the Court. My name is Paula Harms. With me at counsel table is Thomas Galen. We represent the petitioner in this matter, Mr. Viva Leroy Nash. Lawyers exist to serve the interest of their client. That is the fundamental interest that Rowan seeks to protect. The ability to communicate rationally with your client is absolutely crucial to the relationship. When a client's mental illness is of such severity that this rational communication cannot take place, the attorney simply cannot do their job. The Rowan right applies to appellate proceedings. It was founded on the statutory right to habeas counsel. If you look at that statute, the right to counsel specifically applies to appellate proceedings and also competency proceedings. Rowan was concerned about the competency to pursue habeas relief. Nothing in the language of the opinion specifically limits it to district court proceedings only. And this makes sense because the need for rational communication does not end with the appeal. Rowan was based upon the common law right, which is firmly rooted, that at any point prior to execution, if the petitioner becomes incompetent, the proceedings must be stayed. And the rationale that existed for that is still as good today. It was ‑‑ Can I ask you a question? Sure. When ‑‑ just assume for a moment that Rowan applies to all. Okay. Is there any difference in the level of competency or the degree of competency or the focus of the competency question on the issues that are raised on appeal? I think the need to communicate with your client on appeal is the greatest when the argument is that more factual development is needed below. What if we just had a pure ‑‑ I don't know if there is now. Maybe just a jury instruction issue. I think Rowan is instructive on this because what it says is you cannot ask someone who represents an incompetent client to theorize what they could say to help you and to help their case if they were competent. Perhaps they could allege some fact that would make them innocent of the death penalty. Some other issue not directly related to an issue in their appeal, but you as an attorney ‑‑ Are you talking about facts that are already in the record or facts that aren't in the record? Well, on facts outside the record, I think that that is what the common law right was talking about, was that they could allege something, some fact. How could you raise that on appeal? Well, you could always file a 60B based upon new facts. Right. But that's in the district court. Right. But, for instance, the best example I can give you as to why I need Mr. Nash's help on appeal involves his claims of ineffective assistance of counsel. And it's true I'm limited to arguing the facts that are already in the record, but facts outside the record directly affect the decisions I make as his appellate counsel. Looking at this case, he's never had a hearing in State or Federal court on his ineffective assistance of counsel claims. If we were forced to file an appeal, those would arguably be his best claims. But the best claim is, I need a hearing in district court. However, because Mr. Nash is incompetent, I'm not sure what good that hearing would do me, since I can't rely on him as a witness. I can't rely on him to give me reliable information about the interactions with his trial counsel, reliable information about his own background in terms of investigating mitigation. So in terms of choosing the claims that I present to this court, oftentimes my interactions with my client will directly affect that. Let me ask a slightly different question. Is there a difference under Rowan, do you believe, in a petitioner who becomes incompetent after the notice of appeal is filed or after the district court proceedings have concluded and one who was incompetent before? I don't think so, because Rowan was so firmly rooted in the common law right that at any point before execution, if the client becomes incompetent, the proceedings must be stayed. And the rationale for that ---- But if the client is incompetent at the district court level, why isn't that issue, to at least a certain extent, waived on appeal? Competency is not necessarily one of those things that the attorney can waive for the client. It is of such a fundamental nature and can inject structural error into the proceedings. The care must be taken if there are signs of mental incompetence. There's case law about the trial court duty to sua sponte, inquire. But it seems to me there's a difference on somebody who becomes incompetent after the appeal is filed or after the district court proceedings have concluded and one who was incompetent before, but this attorney for tactical or other reasons decides not to pursue that. How should we view that on appeal? I think the Holmes Court said that the level of competency required depends upon the nature of the proceedings. And I think I would have to concede that trial court level, lower court level, you arguably need your client more than you do on appeal. So that means we should look at the issues that she wants to raise on appeal? Well, Rowan says you can't inquire into the issues. But if you raise issues that arguably need factual development, for instance, I think you definitely have a right to have rational communications with your client. And also, just I would go back to the common law right, because the rationality of that ---- Well, I guess we're just going around in circles again. But, you know, it seems like there's a certain amount of record, a factor showing that's been made in the district court to this point, correct? There has been some, but he did not get a hearing in the district court. He did not get a hearing in state court. He has very colorful allegations of ineffective assistance of counsel. But my best argument on appeal is that I need a hearing. Well, now I have an incompetent client who's not going to be any help of me at a hearing. Well, if the district court erred in not giving you a hearing, shouldn't that ---- and it gets sent back down to give you a ---- to provide a hearing, isn't it at that point that competency then becomes a critical issue for the district court? Well, it's also an issue on appeal, though, because the issues and the theories of ineffectiveness I highlight that I need a hearing on before this court are what's going to control what the hearing is ordered on. And I wouldn't want to be highlighting facts and theories that are based upon what my incompetent client says. Mr. Nash submitted an affidavit earlier on in the proceedings, and it's questionable whether I can rely on his statements about what happened between him and trial counsel. I would like to cede the remainder of my time to Ms. Lett. Good morning, Your Honors. May it please the Court. I'm Sylvia Lett, also from the Arizona Federal Public Defender's Office, appearing on behalf of Capitol Petitioner Mr. James Adams. My procedural ---- the procedural posture of Mr. Adams' case is a little bit different than Mr. Nash's, because a rule ---- a motion to entertain a rule-setting has been filed in the district court, and that is currently pending there right now. Also before you in the Ninth Circuit, in addition to our motion to unseal and our motion to determine Mr. Nash ---- excuse me, Mr. Adams' rowan competency is also the State's motion to dismiss the proceedings and to remand the case for competency determination under Reese. Judge Thomas, you asked an interesting question about, I believe, what the appropriate standard should be. And if I'm following your question, if this Court should follow the Seventh Circuit's suggestion in Holmes v. Buss that somehow the standards of competency change according to what claims have been raised or have been developed. I think that was Judge Piazza's question, but it was mine. I was going to ask about that. I would ask if you didn't. Go ahead. My answer to that would be to look at Judge Kaczynski's analysis of the Reese decision in front of the Supreme Court. And what happened in that case is Mr. Reese wanted to withdraw his petition for writ of certiorari. And in making that determination, the Supreme Court sent the case back to the district court to determine his competency, but asked not just to determine his competency on whether or not he could withdraw that cert petition, but also it contemplated whether or not, if incompetent, what would happen in terms of proceeding without him. And within that, I think, if you parse through it, there's an indication that the common law right to competence flows throughout the entire pendency of habeas proceedings. District court appeal up to the point that someone might be found up to the point of execution, at which point the Ford v. Wainwright standard kicks in. Well, go ahead. Go ahead. Go ahead, Judge Thomas. Go ahead. My question was this. Do you see any difference in competency in answering the question whether somebody is incompetent, competent to be executed, as opposed to somebody who is claiming, well, the argument here is competency to communicate with their lawyer. Is there any difference? I do see that there's a difference. What's the difference? If you're incompetent, why aren't you just incompetent for all purposes? How do you measure the difference? Well, if I'm understanding the Ford competency test correctly, it's does the defendant understand why he's being punished by execution, and is there a mental disease or defect that prevents him from being aware of the impending execution and the reason for it? So in a sense, you've moved past any analysis of whether there are issues that require a capital petitioner's input on. Whereas, for example, in Mr. Adams' case, no COA was granted from the district court, and when I was first appointed to the case, I've been in the process of reviewing the record and trying to see which are the issues that we should seek a COA on. Some of the issues are purely legal in nature. Some of them are those that Rowan contemplates need the input from the petitioner, and that I do not have because of his current mental disease. But maybe I just said what's pending in the district court was the State wants to remand this back for the district court to determine whether or not he's competent to withdraw his appeal. Yes. Is that determination any different than his ability to effectively communicate with his lawyer? I believe it is, Your Honor, for two reasons. First of all, I think you have to look at the factual record, and Mr. Adams is someone who has, during the district court proceedings, made overtures and attempted to withdraw his habeas proceedings at least six times. He constantly flip-flops. So taking that into account, it would be a waste of judicial resources to send it back for a competency determination, have him change his mind, and then come right back here for the Rohan competency. The other reason is just an outcome-determinative reason, in that, if we were to do a ---- Are you suggesting that we make the factual determination here? No, Your Honor. But I am suggesting that ---- He has to go to the district court in any event to make a determination of one kind or another about competency. That's correct, Your Honor. If the district court makes a determination that he is incompetent, withdraw his appeal, does that also answer the Rohan question? Yes, it does, Your Honor. All right. And I'm eating up more time. I'd like to reserve the remainder of the time for rebuttal. Thank you. May it please the Court. My name is Jeff Sick. I'm an Assistant Attorney General in the Arizona Attorney General's Office. I want to clear up a couple things with respect to the difference procedurally between Mr. Nash and Mr. Adams' case. Mr. Adams does have a 60B-6 motion that is currently pending in the district court, where he is alleging that he was not competent for the entire habeas proceeding in district court. Mr. Nash does not have a 60B-6 motion pending in the district court. With respect to ---- State's position on the 60B motion in Mr. Adams' case. In Mr. Adams' case, the State's response is due, I think, on December 11th. The State's position is going to be that Mr. Adams' motion is untimely, and if the district court wants a briefing on the merits with respect to Mr. Adams' motion, then the State will brief the merits of that motion. And in the merits briefing, it is clear, at least from my reading of the record below, which you don't have ---- I don't believe you have access to at this point, so I don't know if it's relevant for your decision here. And it really isn't relevant for the decision here, because what you're being asked to do is to extend Rohan competency to the appeal. And in Rohan, competency, the court found that competency was significant because there could be issues or there may have been issues in that case, in Gates' case, that could potentially benefit from his communication with counsel. On appeal, there are no issues that could potentially benefit counsel and any rational communication with either Nash or Mr. Adams, because the record is made below and the time for rational communication and the time to challenge ---- Well, the Supreme Circuit said that it would follow Rohan and apply that to on appeal, because they didn't want to create a circuit split, among other reasons. So they construed Rohan as applying to appeals. And we would create a circuit split now if we didn't follow the Seventh Circuit. I don't ---- Well, the Seventh Circuit decision in Holmes v. Buss, the one that Judge Posner wrote, is ---- it's an odd decision. I know that procedurally the court found that or did not ---- well, let me back up. The State of Indiana did not challenge Rohan and whether competency was required in a habeas proceeding. And I think Judge Posner wrote in his decision reasons for not applying Rohan competency in a habeas proceeding. They did not ---- because the State of Indiana did not challenge that, the court didn't feel ---- Well, I'm not ---- And their explanation, they said, because ineffective assistance of counsel, for example, they said, was one place that it was important whether your client was competent. But rationally, it makes sense for that communication between counsel and client occur before a fact-finding tribunal. For example, in habeas, there is the potential that a petitioner can ask for evidentiary development and can ask for an evidentiary hearing. It would occur before a fact-finding tribunal because opponents concede that this kind of a determination of competency would have to be made in the district court. If you were to find that Rohan competency applied to the appeal, yes, it would have to go back to the district court for a determination. But in this ---- What's your suggestion as to what we should do in light of the pending proceedings in the district court? The issue that's before you today is whether Rohan is extended to the appeal. That is separate than the issue before the district court, whether he was competent during his entire ---- So you're suggesting we decide that issue despite dependency of the 60B motion? Well, I think one thing you could do is not decide at Mr. Adams' case and let the district court litigate whether the 60B6 motion is appropriate or if there's any relief that the district court would grant. At that point, that could come back up for litigation in this court. But Mr. Nash does not have such a motion. Neither Mr. Adams or Mr. Nash ever requested a competency hearing in district court. They have never asked for that. It never was an issue in the district court. It is only an issue now after the notice of appeal has been filed. And the difference between competency after the notice of appeal is filed and competency below is rational communication. There does not need to be rational communication on appeal. I understand why you say that. I guess I don't follow the logic. I understand it to a certain extent saying you're sure these issues are pure questions of law, but you have tactical decisions to make as to which issues to pursue. I can't imagine in my former life not consulting intimately with my client at all stages of the appeal. That would be inconceivable to me. So why do you presume that that logic doesn't carry forward for criminal defendants, particularly capital defendants who are not competent? I think in Ford v. Nixon, the United States Supreme Court said that an appellant needs to be competent in order to make the decision on whether to take an appeal. However, what issues are to be brought to the court's attention, what strategies to be used are solely those of the lawyer. Now, I'm not saying that there shouldn't be any communication between an appellate lawyer and a client. However, that communication is lessened. Well, I'm not sure about the case you're talking about. I don't recognize the name, but I do know the principle that they set forth, which was what is a tactical and what is a strategic position? What is a decision that is ultimately up to the lawyer as opposed to being ultimately up to the client? But I think that's a different question from whether the lawyer should consult with the client fully about the issue before making the decision. And I agree with that. However, the rational communication that's required in competency, for example, from the Rohan decision, is quite different on the appellate side as opposed to a fact-finding side. It may be different factually, but it's still the same type of decision. You're really arguing the point of whether it matters whether there's incompetency at the time of appeal, right? That's correct. The State doesn't believe that it does matter. And if it's true, I'm not sure you're now arguing that rather than that the lawyer doesn't have to consult at all, you're arguing that he doesn't have to be quite as incompetent. There's a difference in the degree of incompetence. Well, I think certainly there is a difference in the degree with respect to when you're talking about a trial setting or any other fact-finding setting as opposed to the appellate setting. I think the best way to describe it is how Judge Posner described it in Holmes v. Buss. The only mental capacity that a petitioner would need would be to decide whether to take appeal,  So that is really the only communication that is necessary with respect to an appellant or a petitioner when you get to the appeal. Well, I don't know. It seems to me that if the decision on whether to assert a Herrera claim, for example, actual innocence, the extent to which to press for an effective assistance of counsel claim, those are pretty fundamental. And we've had a lot of capital cases, well, some anyway, in which there have been disagreements between the lawyer and the client with respect to strategy on fundamental issues on appeal. We get pro se pleadings saying, I don't want this argument to be raised, and finally they get resolved. But that happens all the time. Why shouldn't that be of some import in our decision on whether or not to apply Rohan on some basis on appeal? Because the time for rational communication on those types of issues is when the record is being made. And this is in terms of the record is being made. It's settled. But a tactical decision on what issues to pursue or not pursue are pretty important. And those are those tactical decisions are left to the lawyer. But after consultation with the client and hearing what the client's reasons are, the lawyer can make the decision on those tactical reasons. That's correct. And the lawyer can't consult. But if he's deprived of the opportunity to hear his client's views, that's going a lot farther than saying he has a right to make the ultimate decision. But if you extend that type of Rohan analysis to the appeal, you're doing it piecemeal on a case-by-case basis that only deals with certain issues. I think when you're talking about rational communication, it applies best in the fact-finding arenas where the record is made. Well, maybe best, but good enough on the other. And maybe you're right. Maybe we should just have a flat rule that it applies rather than trying to do it issue by issue. That's a good argument for doing it overall. Well, I would disagree with a flat rule requiring it in an appellate proceeding. I think rational communication, the type that Rohan discussed, is more beneficial in the fact-finding arena where the record is made. Well, that may be true, more beneficial. I think it is beneficial. It is beneficial at the trial level, no doubt, and may be more important there than on appeal. But that doesn't answer the question of whether it's also important, although not as important, on appeal. I don't believe it is important on appeal because the record has been made, and the lawyer can decide which issues to raise, which is the best strategy. Yeah, we're just going around. Let me ask you a little different question on sort of the factual showing that was made here. The affidavits that were presented to us, is it your position that they have not even shown a prima facie, made a prima facie showing that Mr. Nash is incapable of rational communication? Some of the affidavits that I've seen, I haven't seen all the information. Right, I understand that. So I can't speak to that. I don't believe. Based on what you've seen so far. Based on what I've seen so far, I believe Mr. Nash is incapable of rational communication. He is competent to rationally decide to take an appeal, which he has. So that issue is not even before this Court. I think he has the ability to rationally communicate at this point. Well, do you think he's raised a question as to that? I think his, in what would you advise his question is. Has he made a, has he raised a prima facie case? He is quite elderly, correct? He is 93 years old. He's had several health issues that have been raised in the district court, if I'm not mistaken. Right. He has some health issues that I'm aware of, heart issues. I think he fell and broke his hip. There are records that talk about his age quite a lot, the Arizona Department of Correction records. Is there a question? Have they raised enough of a question through the affidavits? That should be determined by the district court. However, Mr. Return it to the district court. But, Mr., if you decide that he has. I don't believe he has made a rational or a showing that he is not competent at this point. And I say that given the history of this case. Some of these records that have been attached to the motion before you go back to 1993 or maybe even earlier. And not once has Mr. Nash claimed he was not competent in the district court. It is only now that he does so. So I don't believe there is a showing at this point that he is incompetent to go forward with his appeal. Well, I think Judge Reinhart framed it better, which is that has he raised a sufficient question about his incompetence, about his ability to effectively communicate? No, I don't believe he has. Let me ask a different question. Do you think there are three different competency standards we're dealing with here? One, whether or not to withdraw an appeal. Two, the Rohan standard. And three, the standard on which one can execute a person. I think the different standard is the one at execution. The Ford versus Wainwright. So you think the two standards, being able to make a rational decision on whether to withdraw an appeal and the Rohan standard are the same? I think to the most extent they are because they both deal with rational communication, whether to assist counsel. All right. So in the Adams case, then, aren't you basically conceding that we need to remand this anyway because he's made you don't think so? Because he made. No. A request to withdraw, right? He never made a request to withdraw his appeal. Let me back up. He does not currently have pending any requests. Well, let me ask more generally. Theoretically, if an inmate made a request to withdraw an appeal and his counsel independently asserted a Rohan request for remand, you would agree that the proper course would be to remand it all for a determination of competency? Yes, I agree with that. In that circumstance. In that circumstance, I do. However. I didn't put my question quite correctly. But let me get to my ultimate question here. If we're headed in these cases to a Ford question ultimately on execution, wouldn't it be better to send it down and get all that resolved now in the first instance rather than having to face this question again in six months or a year? No, because I think those two standards are different. And you could have you could have I don't believe there would be a situation, well, there could be a situation, but I don't believe it would be a situation that would happen very often. You could determine competency, say, in year one in the district court, and then in year ten when you come before for the lawful sentence to be executed, you could have an individual become incompetent. Thank you. Mr. Nash did raise his incompetency in the district court proceedings. Back in 1998 when he was filing his amended petition, Mr. Phelan, his current counsel at that time, alleged that Mr. Nash was currently incompetent to be executed. You have to consider the legal landscape at that time. Rowan wasn't decided until 2003. So counsel did his best to raise Mr. Nash's incompetency. He raised his delusions at a status hearing on August 19, 1997. At another status hearing, he noted that Mr. Nash's unrealistic view of his claims was at odds with his counsel's. We have presented a prima facie case of an incompetency. And Holmes, they said that the expert report provided the prima facie case. Here not only do we have an expert report, we have medical records, physicians who were just tasked with treating his physical problems commented that he was demented. The nature of delusional disorder, I find it striking that so many of these incompetency cases involve defendants with delusional disorder, Rohan, Panetti, the Hinckley case, just to name a few. The paranoid subtype of delusional disorder presents especially difficult circumstances for someone who is their attorney because many of their delusions will often center around legal issues. And they can be very vocal about what are the best legal issues that need to be presented, but their perceptions of reality are so distorted that they're at odds with what their counsel thinks. And so I'm glad that you raised that, Judge Thomas, about clients on appeal and death penalty cases threatening to drop all their appeals if their pet issues don't get raised or wanting to pursue guilt phase claims only and not pursue sentencing issues. So the nature of delusional disorder can really affect what gets presented to the court. I'm sorry, I seem to have taken my counsel's rebuttal time. Can she have? We'll give her a minute. Okay. Thank you, Your Honors. To be brief, to clear up something, Mr. Adams, the State has filed a motion to dismiss the proceedings and to remand for competency determination under Reese. And I would point to our responsive pleadings for that in which we attached a declaration by our case investigator in which Mr. Adams indicated that his reasoning for wanting to give up his appeals at this time is because we actually don't believe his paranoid delusions. He wrote a letter to somebody, didn't he, that he wanted to withdraw? Yes, to the State. And then they filed a motion with us, correct? That's correct, Your Honors. Interesting. And do you think the Reese and the Rohan standard are the same, right? Do you agree with the State on that? Yes, I do. And what we would suggest to the Court, if you are going to remand this back for a competency determination under Rohan, it doesn't matter right now if it's a competency determination for appeal or for the district court. Our argument is that the district court proceedings were so infected by Mr. Adams' incompetence that that carries through to the appeal. Let the district court determine the Rule 60b-6 motion as it's making the competence determination under Rohan, and then we'll know where to go. But the 60b motion that the State argues is untimely. And we will listen. So if we were just to return this for a competency hearing, that would, in effect, say it doesn't matter whether 60b was timely or not. You're going to make a determination as to competency. And, Judge Reinhart, you make an excellent point. And it, I guess, would make the most sense, then, to state the Ninth Circuit proceedings pending the outcome of the 60b-6 motion. Well, and also, but isn't it a different issue, too? I mean, now that I've heard the clarification of what's involved in the 60b motion, is that just directed to whether or not he was competent during the district court proceedings? It is directed towards that. I realize that if you have something that's a continuing problem, that it may overlap a bit. But the question of whether he's competent now and whether he was competent then, theoretically, could be two different. It could have two different answers. Theoretically, it can, Your Honor. I don't know if it does in this case. In this case, what happened at the district court, it so infected his appeal at this point that we think it's integrally enmeshed. Thank you. Thank you, counsel. Thank you all very much. Both cases will be submitted.
judges: Reinhardt, Thomas, Paez